**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____

CARLOS MARTIN,              )

      Plaintiff,           )

      v.                  )       CIVIL NO.   3:08CV849

RICHMOND CITY POLICE DEPT., et al., )

      Defendants.      )
_____)

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B) for a report and recommendation on the Defendants' motions to dismiss for failure to state a claim upon which relief can be granted (Docket Nos. 7, 9 & 15).  For the reasons set forth herein, it is RECOMMENDED that Defendants' motions be GRANTED, and that all of the Plaintiff's claims be DISMISSED, WITH PREJUDICE, where Plaintiff has failed to prosecute and pursue this matter as required.  However, in the interest of judicial efficiency, where the matter may be reviewed on its merits, the Court will also address the relevant issues raised in the defense motions.[1]

## I. Factual Background[2]

_____

[1]  While the Court is mindful of the Plaintiff's *pro se* status whereby he should be afforded all reasonable opportunity to pursue his claims, he will be able to object to this Report and Recommendation within the requisite time period and seek leave of court for further input. Accordingly, the Court does not believe that he should be provided, *sua sponte*, any further opportunity for input at this juncture of the proceedings.

[2]  The asserted facts are considered in the light most favorable to the Plaintiff as the non-moving party.  See Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993).

Officer Carlos Martin ("Martin" or "Plaintiff"), who is an African-American, has sued the Defendants on the basis of alleged race discrimination in violation of 28 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964.  Plaintiff claims that his civil rights were violated while working for the Richmond City Police Department ("RCPD") because he was disciplined more severely than, and disproportionately to, white police officers in the same unit who had committed similar or more severe violations of police policy or Virginia law.  More specifically, Martin was suspended without pay after being charged with two misdemeanor offenses that alleged he had summoned emergency assistance (calling "911"), absent an emergency situation.

Plaintiff, acting *pro se*, initially filed suit on January 13, 2009 against the RCPD, along with several individual police officers, two individual attorneys in the Richmond Commonwealth Attorney's Office, and Douglas Wilder ("Wilder"), then Mayor of the City of Richmond, Virginia.  (Docket No. 3.)  On February 12, 2009, without first seeking leave of the Court, Plaintiff filed his first Amended Complaint, adding the City of Richmond and another individual officer to his complaint as defendants.  (Compl. at 1.)[3]

Plaintiff was hired by the RCPD on September 23, 2003, and was assigned duty as a police officer. (Compl. ¶ 1.)  On July 26, 2008, Martin was "accused of calling '911' and falsely summonsing law enforcement."  (Compl. ¶ 2.)  On September 5, 2008, the City charged Martin with two misdemeanors for allegedly filing a false police report.  (Compl. ¶ 3.)  That same day, Defendant Detective Bartley interviewed Martin and informed him that the RCPD was suspending him without pay as a result of the pending allegations.  (Compl. ¶ 4.)  Later that day,

---

[3] All citations to the Complaint refer to the Amended Complaint, filed February 12, 2009 (Docket No. 5).

Defendant Acting Chief of Police McCoy e-mailed the officers and staff at RCPD and informed them of the charges pending against Plaintiff.  (Compl. ¶ ¶ 5-6.)  The internal e-mail included a photograph of Plaintiff, and it further noted that he had been suspended without pay.  (Compl. ¶ ¶ 5-6.)  In addition to this internal e-mail, McCoy also announced to local media that Plaintiff had been charged with the two misdemeanor offenses and had been suspended without pay as a result.  (Compl. ¶ 6.)

On September 15, 2008, Plaintiff submitted a grievance to RCPD in which he asserted that he was a victim of discrimination because he had been suspended without pay, while white officers in similar circumstances had been suspended with pay.  (Compl. ¶ ¶ 6-7.)  Given the alleged disparity, Plaintiff requested that his pay be reinstated during the course of his suspension.  (Compl. ¶ 7.)  On September 19, Defendant Assistant Chief of Police Buckovich notified Plaintiff that his grievance had been denied, and on September 23, 2008, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against the RCPD in which he raised his concerns of racial discrimination, based on the course of events.  (Docket No. 8 at Ex. 2.)[4]  On September 30, 2008, the EEOC issued a "right to sue" letter to Martin in regard to his claim(s).  (Docket No. 8 at Ex. 1.)  The EEOC closed its file for the stated reason that it was "unable to conclude that the information obtained established[d] violations of the statutes."  (Docket No. 8 at Ex. 1.)

Shortly after being suspended without pay, Plaintiff began seeking alternate employment, and he was ultimately hired by Centura College.  (Compl. ¶ 11.)  However, during an orientation

---

[4]  Three separate motions to dismiss were filed on behalf of the thirteen defendants.  For the sake of clarity and simplicity, all citations to the briefs in support of the motions and their corresponding exhibits will be cited by the corresponding docket number.

session, a student in the same group recognized Plaintiff from a press release issued by the RCPD which described the charges against Plaintiff and his ensuing suspension. (Compl. ¶ 12.) The student purportedly complained to the school's administration and Plaintiff's employment with Centura College was terminated soon thereafter as an apparent result of the student's protestations. (Compl. ¶ ¶ 12-13.)

In support of his allegations of disparate treatment by RCPD, Plaintiff references various anecdotal statements that he argues demonstrate discrimination by the RCPD. Specifically, Martin lists several incidents involving white officers who allegedly violated law or police policy, but who were not disciplined as severely as Plaintiff. (Compl. ¶ ¶ 15-28, 29-42.)[5] Plaintiff also notes that the facts and circumstances surrounding the various white officers' violations were never released to the media, nor where they circulated via e-mail to the officers and staff at RCPD. (Compl. ¶ 36.)

On December 30, 2008, Martin filed a motion to proceed *in forma pauperis* with this Court, to which he attached a copy of his proposed complaint. (Docket No. 1.) On January 13, 2009, his motion was granted and his Complaint was filed with summons issued as to the listed defendants. (Docket Nos. 3 & 4.) On March 19, 2009 the City of Richmond, the RCPD, and the individual officer defendants moved to dismiss the complaint pursuant to Rule 12(b)(6), for failure to state a claim upon which relief could be granted. (Docket No. 7.) On March 20, 2009

---

[5] For example, one of these incidents involves disciplinary measures taken against white officers after a January 2008 incident when a white, off-duty officer engaged in a bar fight with a citizen. On-duty white officers arrived at the scene and subsequently omitted various details from the attendant crime report. The off-duty officer was ultimately charged with misdemeanor simple assault. The offending officer resolved the charges by paying $5000 in restitution to reimburse the medical expenses incurred by the victims. The officers that arrived on the scene and modified the police report were charged with obstruction of justice, but they were allegedly placed on administrative leave, with pay. (Compl. ¶ ¶ 15-27.)

the individual attorneys in the Commonwealth's Attorney's Office, and later on April 7, 2009,

former Mayor Wilder and Assistant Chief of Police Buckovich filed motions to dismiss on the

same grounds.  (Dockets Nos. 9 & 15.)

## II. <u>Standard of Review</u>

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding facts, the merits of a claim, or the

applicability of defenses."  <u>Republican Party of N.C. v. Martin</u>, 980 F.2d 943, 952 (4th Cir.

1992) (citing 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> §

1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-

pleaded allegations are taken as true and the complaint is viewed in the light most favorable to

the plaintiff.  <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993); <u>see</u> <u>also</u> <u>Martin</u>,

980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the

claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atl. Corp. v. Twombly</u>, 550

U.S. 544, 555 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).  Courts long have

cited the "rule that a complaint should not be dismissed for failure to state a claim unless it

appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which

would entitle him to relief."  <u>Conley</u>, 355 U.S. at 45-46.  In <u>Twombly</u>, the United States Supreme

Court noted that a complaint need not assert "detailed factual allegations," but must contain

more than labels and conclusions" or "a formulaic recitation of the elements of a cause of

action."  550 U.S. at 555 (citations omitted).  Thus, the "[f]actual allegations must be enough to

raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible

on its face," id. at 570, rather than merely "conceivable."  Id.  Therefore, in order for a complaint

to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state

all the elements of [his or] her claim."  Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761,

765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice

v. United States, 289 F.3d 270, 281 (4th Cir. 2002)).[6]

### III. Analysis

**A.    Plaintiff's Claims Pursuant to 42 U.S.C. § 1983**

United States Code 42 U.S.C. § 1983 ("§ 1983") provides that "[e]very person, who

under color of any statute . . . of any State . . . subjects . . . any citizen of the United States . . . to

the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

shall be liable to the party injured in an action at law . . . ."  See also Coppage v. Mann, 906 F.

Supp. 1025, 1035 (E.D. Va. 1995).  Plaintiff alleges that the Defendants infringed his rights as

guaranteed by the Fifth and Fourteenth Amendments of the Constitution, thereby violating §

1983.  (Compl. at 10.)

---

[6]  When a motion to dismiss pursuant to Rule 12(b)(6) is accompanied by exhibits, which
are considered by the court, the motion will be construed as a motion for summary judgment
pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Pueschel v. United States, 369
F.3d 345, 353 n.3 (4th Cir. 2004).  At the same time, if the exhibits do not present information
outside the scope of the pleadings, a motion to dismiss shall not be converted to a motion for
summary judgment.  Cf. Harrison v. U.S. Postal Serv., 840 F.2d 1149, 1152 n.7 (4th Cir. 1988)
(If a motion to dismiss includes "matters outside the pleading . . . and [is] not excluded by the
court, the motion shall be treated as one for summary judgment and disposed of as provided in
Rule 56.").  The underlying information in the exhibits attached to the City, Police, and
individual Officer Defendants Motion to Dismiss are within the scope of Martin's Complaint.
(Compl. ¶ 9 (describing EEOC complaint and "Notice of Suit Rights").)  Therefore, the subject
motions are governed by Rule 12(b)(6), and not as motions for summary judgment.

1.      Motion to Dismiss the § 1983 Claims Against the City of Richmond and the
        Richmond City Police Department.

The City and RCPD are deemed "persons" for purposes of potential § 1983 liability.  See

Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 688-89 (1978).  "The

[Supreme] Court . . . has consistently refused to impose § 1983 liability upon a municipality

under a theory of respondeat superior."  Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th

Cir. 1999) (citing Bd. of the County Comm'rs v. Brown, 520 U.S. 397, 403 (1997)).  Thus, for a

municipality to be found liable, the deprivation of constitutional rights must result from "an

official policy or custom."  Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999).

To establish a violation of rights based on an "official policy" in this case, there must be

facts alleged by Plaintiff that demonstrate that the City or the RCPD enacted a policy that serves

to punish black offers who violated police policy or Virginia law more severely than their non-

minority counterparts.  "Municipal custom, on the other hand, may arise when a particular

practice 'is so persistent and widespread and so permanent and well settled as to constitute a

custom or usage with the force of law."  Austin, 195 F.3d at 727. (quoting Carter, 164 F.3d at

218.)  Although Plaintiff has not established facts indicating that an official policy was in effect,

the facts as alleged in his claim are enough to support the allegation that a discriminatory

municipal custom existed.  For example, Plaintiff alleges that when a white officer had violated

policy by working "off duty," the white officer was suspended for ten to fourteen days.  (Compl.

¶ 42.)  However, when a black officer violated similar policy by "working at an assignment that

was not approved by the [RCPD]," the black officer was summarily terminated.  (Compl. ¶ 42.)

When viewed in the context of the other scenarios alleged by Plaintiff, in which white officers

who violated the law or police policy, or both, were not suspended without pay, Plaintiff fairly alleges a municipal custom sufficient to withstand the City and the RCPD's motion to dismiss. (Compl. ¶¶ 14-25, 29-41.)

Even if the allegations of the Complaint are sufficient to demonstrate an alleged disparate municipal policy or custom, the City and RCPD assert that such allegations are not enough to establish a claim under § 1983.  Specifically, the City and RCPD argue that in addition to facts alleged, Plaintiff must also demonstrate an affirmative, or direct causal link, between the alleged municipal policy or custom and the alleged constitutional deprivation(s) for liability to arise. (Docket No. 8 at 8.)  However, the cited Supreme Court authority addressing the requirement that a causal link exists has been limited to situations in which the claim raised by a plaintiff is based on a "failure to train."  See e.g., City of Canton v. Harris, 489 U.S. 378, 386-87 (1989); Spell v. McDaniel, 824 F.2d 1380 (4th Cir. 1987); Westmoreland v. Brown, 883 F.Supp. 67, 76 (E.D. Va. 1995).  Furthermore, the Fourth Circuit has held that failure to plead causation is not a basis for dismissal, so long as the custom alleged by the Plaintiff is asserted to be unconstitutional in and of itself.  See Spell, 824 F.2d at 1387-88 (citations omitted).  As Martin has alleged a custom by the City that, if proven, would be inherently unconstitutional as it discriminates against members of a protected class, Martin has properly raised a § 1983 claim against the City and the RCPD, and therefore it is recommended that Plaintiff's § 1983 claim(s) not be dismissed at this juncture.[7]

    2.    <u>Motion to Dismiss the § 1983 Claims Against Assistant Commonwealth Attorneys Herring and Thorne-Begland.</u>

---

[7]    But it is also ultimately recommended that all claims be dismissed for the failure of the Plaintiff to properly "prosecute" the matter.  See discussion, infra 24-25.

Plaintiff also alleges § 1983 claims against two state prosecutors, Herring and Thorne-Begland, who represented the Commonwealth of Virginia in regard to the misdemeanor charges brought against Plaintiff.  In response to these claims, Herring and Thorne-Begland assert that they are absolutely immune from Plaintiff's § 1983 claims because the acts which Plaintiff asserts violated his constitutional rights occurred in the context of each of these defendants being engaged in a prosecutorial function on behalf of the Richmond City Commonwealth's Attorney's Office.  (Docket No. 10 at 4.)

Pursuant to the doctrine of absolute immunity, prosecutors are immune from § 1983 claims in circumstances where they are engaged in a prosecutorial function.  See Burns v. Reed, 500 U.S. 478, 483 (1991).  So long as the conduct of the prosecutor in question was "intimately associated with the judicial phase of the criminal process," the prosecutor is immune.  Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976).  The Fourth Circuit has held that prosecutors are cloaked by absolute immunity once judicial proceedings against an individual have commenced.  See Goldstein v. Moatz, 364 F.3d 205, 213-14 (4th Cir. 2004) (distinguishing a prosecutor's investigative function, which does not trigger absolute immunity, as opposed to acting as an advocate, during which immunity would apply).

The first alleged interaction between Herring and Thorne-Begland and the Plaintiff was during a plea agreement discussion, after the time at which formal charges had been filed and the investigative stage of the case against Martin had ceased.  (Compl. ¶¶ 26-27.)  The conduct of a prosecutor in plea-agreement discussions and related hearings cannot be deemed to be investigative where adversarial proceedings have obviously already commenced.  Herring's and Thorne-Begland's presence and actions were therefore "intimately associated with the judicial

phase of the criminal process," and they are thereby absolutely immune from § 1983 liability.

Imbler, 424 U.S. at 430-31.

      3.     Motion to Dismiss the § 1983 Claims Against the Individually Named Police Officers and Former Mayor Wilder.

Additionally, Plaintiff has pursued § 1983 claims against Defendants Archer, Baltz, Bartley, Buckovitch, Hicks, Horn, McCoy, Pearson and former Mayor Wilder, suing each of them for their alleged involvement in his asserted unlawful suspension from the RCPD. The Complaint is ambiguous as to whether or not Plaintiff intended to sue these Defendants in their individual or official capacity; however, as suits against these Defendants in their official capacity would necessarily be barred by the Eleventh Amendment of the Constitution, the Court will, giving deference to Plaintiff's *pro se* status, analyze the § 1983 claims against these Defendants as though they are sued in their individual, and not official, capacities. See Sales v. Grant, 224 F.3d 293, 297 (4th Cir. 200) (noting that suits filed against officials in their individual capacity may not be converted to "official capacity suits, with all the attendant protections of the Eleventh Amendment); see also Weller v. Dep't of Soc. Servs. for the City of Baltimore, 901 F.2d 387, 398 (4th Cir. 1990) ("The dismissal of claims against state officials acting in their official capacities was also proper under the jurisdictional bar of the Eleventh Amendment, although these officials may be sued in their individual capacities.").

Each of the individual Defendants assert that qualified immunity shields them from § 1983 liability.  (Docket No. 8 at 10.)  Qualified immunity shields an individual from § 1983 liability in circumstances where the individual government official, while performing a discretionary act, does not violate a clearly established statutory or constitutional right of which

-10-

a reasonable person would have been aware.  See Ridpath v. Bd. of Governors of Marshall Univ., 447 F.3d 292 (4th Cir. 2006).  There are two threshold questions which determine whether qualified immunity applies, namely: (1) whether the Plaintiff "has sufficiently alleged the violation of a [constitutional] right;" and (2) whether the Defendant's alleged conduct violated a right that "was a clearly established one of which a reasonable person would have known."  Id. at 307 (citing Mellen v. Bunting, 327 F.3d 355, 365 (4th Cir. 2003)).  If both factors are satisfied affirmatively, qualified immunity does not apply.  At the same time, however, if one or both are not alleged, or not established if alleged, then the defense of qualified immunity precludes any liability.

Whether there has been a sufficient allegation in this case that a constitutional right has been violated requires that the Plaintiff establish four elements: (a) that the suspension and charges "constituted a charge of a serious character defect; (b) that this label accompanied any damage to [Plaintiff's] employment status; (c) that it was made public; and (d) that it was false."  Id. at 308.  As the analysis of whether qualified immunity applies to each of these individuals depends on the nature of their purported actions in regard to the alleged discriminatory acts, the issue must be analyzed separately in regard to each.

a.      *Defendants Major Horn, General Counsel Pearson & Former Mayor Wilder*

In his Complaint, Plaintiff has not alleged any specific actions undertaken by Horn, Pearson, or Wilder in relationship to his § 1983 claims.  Therefore, Plaintiff has not properly plead that they have violated any constitutional right; nor that they have infringed upon a clearly established right of which a reasonable person would have been aware.  Therefore, Plaintiff's §

1983 claims against Horn, Pearson and Wilder cannot be sustained, as each would be protected by qualified immunity.

    b.  *Human Resources Division Chief Archer, Lieutenant Baltz & Captain Hicks*

  In his Complaint, Plaintiff's only allegations against Archer, Baltz and Hicks are that they were the officials from whom he "received this disciplinary action." (Compl. ¶ 7.) However, just because the disciplinary action levied against Martin originated with those individuals does not satisfy the <u>Ridpath</u> standard because undertaking disciplinary action does not, alone, constitute a violation of a constitutional right.[8] Specifically, Martin's allegation that his suspension was directed by those individuals does not sufficiently demonstrate that they charged Martin in a manner that constitutes "a serious character defect;" nor did Plaintiff allege that the individuals made their disciplinary decisions "public." <u>See</u> <u>Ridpath</u>, 447 F.3d at 308. Plaintiff only asserts that those individuals were the ones who participated in the disciplinary action, and without further factual allegations, Plaintiff has not sufficiently pled that they have violated his Fifth Amendment liberty interest.[9] Therefore, Plaintiff's § 1983 claims against

---

  [8] <u>Ridpath</u> evaluated qualified immunity in the context of a Marshall University athletic department employee's § 1983 claim against the University and its Administrators because he was transferred amidst a NCAA investigation and his transfer was labeled a "corrective action." <u>Ridpath</u>, 447 F.3d at 308. The plaintiff "identified the constitutional right at issue as the right to procedural due process when governmental action threatens a person's liberty interest in his reputation and choice of occupation." <u>Id.</u> (citing <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S. 564, 573 n.12 (1972) (quoting <u>Conn v. Gabbert</u>, 526 U.S. 286, 291-92 (1999) (observing that "the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to chose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation") (internal footnote omitted))).

  [9] Defendants in this matter concede that Martin's allegations invoked rights protected by the Fifth Amendment's Due Process clause and "liberty" interests. (Docket No. 8 at 8.)

Defendants Archer, Baltz and Hicks must also be dismissed as they are each shielded from liability because of qualified immunity.

### c.     Detective Bartley and Assistant Chief of Police Buckovich

In discussing the disciplinary action he received from the RCPD, Plaintiff asserts that he suffered unconstitutional disciplinary action administered by both Bartley and Buckovich. Specifically, he asserts that Defendant Bartley informed Plaintiff that he would be suspended without pay pending the resolution of the matter, while Assistant Chief of Police Buckovich informed him that his request for reinstatement of pay had been denied.  (Compl. ¶¶ 4, 8.)  As noted previously, in order for Plaintiff's § 1983 claims to withstand dismissal, he must have asserted facts which demonstrate that the Defendants violated his constitutional rights.  See Ridpath, 447 F.3d at 307.  Here, the actions attributed by Plaintiff to these particular defendants do not establish that they charged Martin in a manner that constitutes "a serious character defect," nor did Plaintiff allege that they caused disciplinary decisions to be made "public."  See id. at 308.  Thus, the § 1983 claims against Bartley and Buckovich must be dismissed for failure to state a claim upon which relief can be granted, where, again, potential § 1983 liability is precluded by qualified immunity.

### d.     Chief of Police McCoy

In his Complaint, Plaintiff alleges that, while acting as Interim Chief of Police of the RCPD, Defendant McCoy e-mailed members of the RCPD describing the charges that had been instituted against Plaintiff, and notifying them of his suspended status.  (Compl. ¶ 5.) Additionally, Martin alleges that McCoy violated his rights when he released the same

information to local media.  (Compl. ¶ 6.)  In response, McCoy asserts that he is also protected by qualified immunity from any potential § 1983 liability.

In determining whether Plaintiff has properly alleged a violation of his constitutional rights, sufficient to overcome the Defendant's qualified immunity defense, Plaintiff has asserted three, but not all of the four required elements to demonstrate that a constitutional right was violated.  The first element requires that the charges and suspension "constitute[d] a charge of serious character defect," and is satisfied because the alleged charges impute character defects such as dishonesty or immorality.  See Ridpath, 447 F.3d at 308 (quoting Robertson v. Rogers, 679 F.2d 1090, 1092 (4th Cir. 1982)).  Accordingly, Martin has sufficiently pled that McCoy's e-mail was a "charge of serious character defect" where McCoy's e-mail and contact with the media contained an accusation of inherent dishonesty, namely, falsely dialing 911.  Id.

In regard to the second element, Martin must establish that "a public employer's stigmatizing remarks [were] 'made in the course of a discharge or significant demotion.'" Id. at 309 (quoting Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 n.5 (4th Cir. 1988)). The element is satisfied as Martin's suspension was "a dramatic change of status equivalent to outright discharge" and his suspension without pay was a severe change in status analogous to a discharge.  (Compl. ¶¶ 4, 6; Ridpath, 447 F.3d at 311 (citations omitted).)  While still an employee of the RCPD during his suspension, without pay, Martin actively sought alternative sources of income at Centura College, and elsewhere.  (Compl. ¶¶ 11-13.)  Indeed, the affidavit completed by Martin and attached to his Motion to Proceed In Forma Pauperis indicated that, on December 30, 2008, Martin was employed by the RCPD, and that he was receiving no income from the RCPD, but that he was receiving income for other unspecified work.  (Docket No. 1.)

Martin's alternative employment demonstrates that his change in status with the RCPD is to be regarded "essentially as a loss of employment."  Ridpath, 447 F.3d at 311 (quoting Moore, 557 F.2d at 438 (internal quotation marks omitted)).

The third element establishing that a constitutional right was violated requires that the Plaintiff assert that "a charge of serious character defect [was] publicly disclosed."  Ridpath, 447 F.3d at 312 (citing Wooten v. Clifton Forge Sch. Bd., 655 F.2d 552, 555 (4th Cir. 1981), Fuller v. Laurens County Sch. Dist. No. 56, 563 F.2d 137, 141 (4th Cir. 1977)).  Martin alleged that McCoy made the information public by:  (i) e-mailing the RCPD, and (ii) by contacting the local media.  (Compl. ¶¶ 5-6.)  Officer McCoy does not deny that the allegations were made public, stating in the brief supporting his motion that "criminal charges, once filed, are available to the public for inspection [at] the appropriate clerk's office" and that "[t]he report of his suspension without pay and subsequent criminal charges were factual statements."  (Docket No. 8 at 10-11.)  Thus, Martin also alleges the third element in a sufficient manner.

The final element of the analysis to determine whether a violation of a constitutional right has been properly pled requires the Plaintiff to assert that "the charges at issue are false."  Ridpath, 447 F.3d at 312 (citing Stone, 855 F.2d at 172 n.5).  As to that element, there is nothing in Plaintiff's lengthy complaint asserting that he has been wrongly charged, or that the charges against him are otherwise without merit.  Instead, Martin simply asserts that he objected to being suspended without pay, rather than with pay.  (Compl. ¶¶ 7, 10 & 14.)  Accordingly, it must be presumed that the information McCoy communicated to the RCPD and the media was accurate and truthful, both as to the allegations and Martin's suspension.  Thus, the fourth element that is necessary to allege the violation of a constitutional right sufficient to overcome the defense of

qualified immunity test is lacking.  Accordingly, Martin has not, and presumably cannot, allege that McCoy violated his Fifth Amendment "liberty" interests.

Nevertheless, assuming, *arguendo*, that Martin had alleged that the charges filed against him were indeed false, and that he had not falsely dialed 911, he would have sufficiently pled the violation of a constitutional right.  However, to pierce the shield of qualified immunity as to McCoy, Plaintiff would also have to establish that McCoy's actions in communicating such information to the RCPD and to the media violated one of Plaintiff's clearly established constitutional rights.[10]  As the Supreme Court has explained, "a constitutional right is *clearly established* when 'its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  Ridpath, 447 F.3d at 313 (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)).  "The 'salient question' is whether the state of the law at the time of the events in question gave the official 'fair warning' that their conduct was unconstitutional." Ridpath, 447 F.3d at 313 (quoting Hope, 536 U.S. at 741).

The Fourth Circuit has determined that "remarks [that] may infringe on an employee's liberty interest" may give rise to a valid § 1983 claim, but the pertinent question in determining if such remarks support a claim depends on whether the plaintiff was provided with "notice and an opportunity to be heard" before the statements were made.  Ridpath, 447 F.3d at 315 (quoting Roth, 408 U.S. at 573.)  In Ridpath, liability was sustained because the plaintiff was not given

---

[10]  The right at issue is more precise than the broad, alleged violation of Martin's Fifth Amendment liberty interest.  "[T]he determination of whether a given right was clearly established requires us to define that right 'at a high level of particularity.'"  Campbell, 483 F.3d at 271 (citing Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999)).  "[T]he proper focus is not upon the right 'at its most general or abstract level, but at the level of its application to the specific conduct being challenged.'"  Simmons v. Poe, 47 F.3d 1370, 1385 (4th Cir. 1995) (quoting Pritchett v. Alford, 973 F.2d 307, 312 (4th Cir. 1992)).

notice or a hearing before adverse remarks were made concerning his employment.  Id. at 313.

"'[N]otice and an opportunity to be heard are essential' when a public employee's liberty interest

is infringed by a charge implying such serious character defects as 'dishonesty[] or immorality'

lodged in the course of an injury such as failure to rehire." Id. at 313-14 (quoting Roth, 408 U.S.

at 573).

In contrast to Ridpath, Martin was afforded notice and an opportunity to be heard.  The

individual Defendants adhered to Roth by providing Martin with the opportunity to file a

grievance.  (Compl. ¶¶ 7, 8.)  While McCoy had been given fair warning by Ridpath and prior

rulings that addressed public remarks concurrent with an employee's termination or suspension,

McCoy, in effect, heeded the warning set forth in Ridpath by providing Martin with the

opportunity to rebut the disciplinary action by pursuing a grievance.  Furthermore, no party has

alleged that the RCPD did not properly and fairly process Martin's grievance, despite its ultimate

denial.  (Compl. ¶ 8.)

In Jackson v. Long, the Fourth Circuit found that a sheriff was shielded from § 1983

liability by qualified immunity.  Jackson v. Long, 102 F.3d 722 (4th Cir. 1996).  The sheriff

dismissed two prison employees amidst a criminal investigation in which they were accused of

the rape of a female inmate.  Long, 102 F.3d at 724.  The sheriff "also issued a press release

announcing his action, and in further public comments, he stated that if the dismissed

[employees] were cleared, they could reapply for their jobs."  Id.  Criminal charges against one

employee were terminated, and criminal charges against the other were never filed, but each

"appeared to have been violating detention center policy at the time of the alleged incident."  Id.

As the court noted, with the hindsight of both "skilled lawyers" and "an objectively reasonable

official in similar circumstances," it could not "justify the conclusion that [the sheriff's] dismissal of [the employees] and his announcement of a criminal investigation violated clearly established constitutional rights." Id. at 730-731.

McCoy's actions are similar to those of the sheriff in Jackson. McCoy's contact with the RCPD and the media were public statements regarding Martin's suspension and pending criminal charges. (Compl. ¶ ¶ 5, 6.) Because the sheriff in Jackson did not violate a clearly established right with his public statements, McCoy cannot be deemed to have violated a clearly established right for his comparable course of action in response to Martin's violation of internal policy and apparent commission of criminal acts. Therefore, Martin's allegations cannot satisfy the second prong required to overcome the shield of qualified immunity.

**B.     Plaintiff's Claims Under Title VII of the Civil Rights Act of 1964.**

Title VII of the Civil Rights Act of 1964 ("Title VII) states that "[i]t shall be unlawful employment practice for an employer . . . to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-(2)(a)(1) (2007). Plaintiff alleges that the Defendants are liable pursuant to Title VII for their conduct relating to his improper suspension, without pay, from the RCPD.

1.     Plaintiff's failure to name the City in his EEOC Complaint does not preclude
        liability on the part of the City.

Plaintiff's EEOC complaint named only the RCPD for alleged violations, but he has now pursued civil claims against both the RCPD and the City. The City argues that Plaintiff has

failed to exhaust his administrative remedies, as required by 42 U.S.C. § 2000e, and thus his Title VII claim must be dismissed.  (Docket No. 8 at 6-7.)

The Fourth Circuit has held that the exhaustion requirement of 42 U.S.C. § 2000e does not always apply when an unnamed entity in an EEOC complaint is essentially identical to those entities that were named.  In Alvarado v. Bd. of Trustees of Montgomery Cmty. Coll., the plaintiff named a college in his EEOC complaint, but then he named only the Board of Trustees of the college and the president of the college as defendants in his subsequent civil action.  848 F.2d 457, 459 (4th Cir. 1988).  The Court in Alvarado held that the failure to name the Board of Trustees in the EEOC complaint did not defeat the civil claims against the Board "[b]ecause [the court] conclude[d] that the board of trustees is identical with the college."  Id. at 460-61 ("Title VII does not require procedural exactness from lay complainants . . .").  Accordingly, the civil claims in this litigation against the City arising out of the EEOC claims against the RCPD are not precluded for the failure to name the City in the EEOC phase because the City and the RCPD are "identical."[11]

2.      Plaintiff's Title VII claims are not time-barred.

The City, Police, and individual Officer Defendants also argue that Martin's Title VII claims fail because Martin did not file his Complaint within ninety (90) days of his receipt of the notice of his right to pursue a civil action, as required by 42 U.S.C. § 2000e-5(f)(1).  Specifically, they assert that the requisite period expired on December 29, 2008, and even if

_____

[11]  Upholding the claims against the City for this reason does not contravene the policy justification for naming separate parties in an EEOC complaint, which include notice to the named party and voluntary compliance with Title VII before the EEOC.  See Alvarado, 848 F.2d at 458-59 (citing Bowe v. Colgate-palmolive Co., 416 F.2d 711, 711 (7th Cir. 1969)).  When the RCPD was named in the EEOC Complaint, both it and the City were put on sufficient notice.

three additional days are added to allow for a mailing delay pursuant to Rule 6(d),[12] the deadline

would have been January 2, 2009,[13] before the initial complaint was filed when it was docketed

by the Clerk's Office on January 13, 2009.  (Docket No. 8 at 4-5.)  The City, Police, and

individual Officer Defendants therefore argue that Martin's Title VII claims are time-barred.

(Docket No. 8 at 4-5.)

      The EEOC generated Plaintiff's "Notice of Suit Rights" on September 30, 2008 that

provided in relevant part that:  "[W]ithin ninety days after the giving of such notice[,] a civil

action may be brought against the respondent named in the [EEOC] charge."  42 U.S.C. § 2000e-

5(f)(1); (Docket No. 8 at Ex. 1.)   Ninety days from September 30, 2008 elapsed on December

29, 2008.  However, "[w]henever a party must act within a prescribed period after service is

made [by mail], 3 days are added after the prescribed period would otherwise expire."  Fed. R.

Civ. P. 6(d); see Nguyen v. Inova Alexandria Hosp., 187 F.3d 630 (4th Cir. 1999) (unpublished

opinion); see also Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 148 n. 1 (1984)

(applying Rule 6(e)'s three day extension to receipt of EEOC "Notice of Suit Rights"); Vicente

v. Genesis Sec., Inc., Civil Case No. 08-1210(SEC), 2009 WL 349814, at *2 (D. P.R. Feb. 9,

2009) (applying Rule 6(e)'s extension to 90 day EEOC period for *pro se* plaintiff's Title VII

civil complaint).  Since the Defendants have not alleged that Martin received the Notice before

---

      [12]  The Defendants cite Federal Rule of Civil Procedure 6(e).  After the December 2007
revision to the Rules, what was contained in Rule 6(e) is now re-numbered as Rule 6(d).

      [13]  The Defendants argue that only if "equitable tolling" applied per Harvey v. City of
New Bern Police Dep't would the 90 day limit be waived to permit an untimely filing.  813 F.2d
652, 654 (4th Cir. 1987).  The issue is not a waiver or extension of the 90 day period, but rather
whether Rule 6(d) added three days and whether the Motion to Proceed In Forma Pauperis with
the Complaint attached meets the criteria of 42 U.S.C. § 2000e-5(f)(1) in order to be considered
timely filed.

October 3, 2008, he is presumed to have received the Notice three days after it was issued, or on

October 3, 2008. Accordingly, Martin had to file his complaint by January 2, 2009.[14]

However, Martin filed a notice with this Court on December 30, 2008, with a supporting

affidavit and a copy of his proposed complaint, seeking leave to proceed *in forma pauperis*.

(Docket No. 1.) Pursuant to Federal Statute, "[a]ny court of the United States may authorize the

commencement . . . of any suit . . . without prepayment of fees and costs . . . by a person who

makes affidavit that he is unable to pay such costs . . . ." 28 U.S.C. § 1915 (2007). In addition,

when a complaint is attached to a *pro se* motion to proceed *in forma pauperis*, and is timely

filed, the complaint shall be deemed filed on the date of the Plaintiff's motion. See Vinson v.

Richmond Police Dep't, 567 F.2d 263 (4th Cir. 1977) (vacated on other grounds); see also

Salahuddin v. Harris, 657 F. Supp. 369, 373-74 n.3 (S.D.N.Y. 1987); Gardner v. King, 464 F.

Supp. 666, 669 (W.D. N.C. 1979); Kracji v. Provident Consumer Disc. Co., 525 F. Supp. 145,

149 (E.D. Pa. 1981).

Here, Plaintiff filed his Motion to Proceed *In Forma Pauperis* and proposed complaint on

December 30, 2008. The Court granted the Motion on January 13, 2009, and the Complaint was

docketed the same day (Docket Nos. 2 & 3). Martin's filing of the Complaint is therefore

deemed timely as it was attached to his Motion to Proceed *In Forma Pauperis* on December 30,

2008, and filed before the deadline.

3.      Plaintiff's Title VII Claims Against the Individual Defendants.

All of the individually named Defendants in this suit assert that Plaintiff's Title VII

---

[14] The ninety day period following October 3, 2008 ended on a legal holiday, New Year's Day and the deadline is therefore computed to have expired on January 2, 2009. Fed. R. Civ. P. 6(a)(3) & (4)(A). In fact, the Defendants assume, arguendo, that Rule 6 applies where they added three days in their calculation. (Docket No. 8 at 5.)

claims should be dismissed because Title VII claims are limited to employer-only liability. (Docket No. 8 at 5-6; Docket No. 10 at 3.)  It is clear that Congress did not intend for Title VII to be applied against individual employees; rather, Congress intended Title VII to only expose employers to liability.  Lissau v. S. Food Serv., Inc., 159 F.3d 177, 180-81 (4th Cir. 1998).   An "employer" is "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ."  42 U.S.C. § 2000e-(b).  A "person includes one or more . . . governments, governmental agencies, or political subdivisions . . . ."  42 U.S.C. § 2000e-(a).   Lissau extended an earlier Title VII holding from the context of the Age Discrimination in Employment Act (the "ADEA").  See Lissau, 159 F.3d at 180 (quoting Birkbeck v. Marvel Lighting Corp., 30 F.3d 507 (4th Cir. 1994) ("We rejected the claim of individual liability under the ADEA.")).  Lissau held that "reading Title VII to foreclose individual liability represents the only logical extension of Birkbeck."  Lissau, 159 F.3d at 180.  See also Johnson v. Quin Rivers Agency for Cmty. Action, Inc., 128 F. Supp. 2d 332, 335 (E.D. Va. 2001) (quoting Birkbeck, 30 F.3d at 507 ("Individual supervisors have no personal liability under Title VII . . . because they are not 'employers' within the meaning of [the] statute.")).

The individual Defendants do not meet the statutory definition of an employer and must therefore be considered as individual persons who are not subject to Title VII liability.  Indeed, each individual defendant was an employee of either the City, the RCPD, or the Richmond City Commonwealth's Attorney's Office during the relevant events and time period and certainly none of them employed "fifteen or more employees for each working day."  42 U.S.C. § 2000e(a)

4.       Plaintiff's Title VII Claims against the RCPD

The RCPD further asserts that it is not liable to Plaintiff because the City is the actual

employer of officers for the RCPD.  Specifically, the RCPD argues that the City, not the RCPD

itself, employed the individual officer defendants and, therefore, it cannot be held liable for Title

VII claims because it is the employer.  (Docket No. 8 at 5-6.)

To accept RCPD's interpretation of Title VII, and the relevant case law, would allow for

the exception to "swallow the rule," contravening the plain language of the statute.  Title VII

defines "person" to include "governmental agencies" and "political subdivisions."  42 U.S.C. §

2000e(a).  The RCPD has admitted that it is "a part of the City as an individual department."

(Docket 8 at 7.)  An "individual department" is clearly analogous to a "governmental agency," or

a "political subdivision."  The RCPD can also be deemed to constitute a "governmental agency"

of the City because the RCPD contemplated such a relationship pursuant Virginia law that

authorizes the City to create such an agency or department.  (Docket No. 8 at 7 (citing Va. Code

§§ 15.2-1404 & 15.2-1701.))  Therefore, for purposes of Title VII, the RCPD is a "person" that

employed more than fifteen employees for each working day and it is potentially liable pursuant

to Title VII, based on the relevant statutory language, where the holdings in Lissau and Quin

Rivers are inapplicable.

## IV. Conclusion

Plaintiff's § 1983 and Title VII claims withstand the City and RCPD's motions to dismiss

because the required elements of the claims are sufficiently pled, but all of Plaintiff's claims

against each of the individual defendants are lacking as a matter of law for various reasons.

However, such possible resolution is rendered moot in any event because Plaintiff has failed to

pursue and prosecute the matter.  Though proceeding *pro se*, the Plaintiff was nevertheless able to file and serve his Complaint, and no pleading or any court document that has been directed to him at his address of record has been returned as undeliverable.  This Court can only conclude that the Plaintiff does not intend to pursue this matter because, since the filing of the Amended Complaint, he has not taken any further action whatsoever.  This Court, *sua sponte*, issued an Order that placed the Plaintiff on notice that he had a right to respond in writing to the pending motions, and the opportunity to present oral argument in support of his position on May 27, 2009 at 3:00 p.m., the Court having extended the prescribed deadline for the *pro se* Plaintiff to respond to any of the motions.  (Docket No. 19).

The Plaintiff has not filed a response to any of the Defendants' motions to dismiss, and he did not appear for oral argument as scheduled.  Furthermore, each of the Defendants' motions to dismiss attached an appropriate notice in order to comply with both Eastern District of Virginia Local Rule 7(K)(1)-(4), and the dictates of <u>Roseboro v. Garrison</u>.  <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1970) (Docket Nos. 7, 9 & 15, each giving notice to <u>pro se</u> Plaintiff of right to file response).[15]   Therefore, this Court is fully satisfied that it and the parties undertook all reasonable measures to facilitate the *pro se* Plaintiff's participation in the matter, and that Plaintiff has affirmatively chosen not to pursue this action further.

Based on the foregoing analysis, it is the recommendation of this Court that Defendants' Motions to Dismiss (Docket Nos. 7, 9 & 15) be GRANTED, and that all of the Plaintiff's claims

---

[15]   In order to proceed with certainty that the Plaintiff was not present in courthouse, the Court delayed commencement of the May 27 hearing in order to allow the Courtroom Security Officer to contact other courtrooms and building entrances to determine that the Plaintiff was not en route to the hearing.  Only after determining that the Plaintiff was not in the courthouse, did the Court commence and conclude the hearing without the Plaintiff ever appearing.

be DISMISSED, WITH PREJUDICE, where Plaintiff has failed to prosecute and pursue this matter as required.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable Robert E. Payne and to Plaintiff and all counsel of record.

### **<u>NOTICE TO PARTIES</u>**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a cop of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusion accepted and adopted by this District Judge except upon grounds of plain error.**

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Dated: June 24, 2009
Richmond, Virginia